Good morning, your honors. May it please the court. Sitting approval for Hector Lopez. I would like to reserve two minutes. I will watch the clock. The first issue in this case is whether, in the context and under all circumstances, the trial court acted in a way which coerced the jury's verdict in violation of loan field v. Phelps. The second is whether substantial evidence existed for the removal of the loan holdout juror, given the events of the prior day and the trial court's lack of inquiry before dismissal. This is a habeas case governed by AEDPA, so our position is that the state court's determination of the facts with respect to both issues is objectively unreasonable and contrary to loan field. I think you can assume we know what all the facts are in the whole iteration that comes to the end when the juror finally calls in sick, but I would like you to answer for me, can we infer an improper motive from the district court's dismissal of juror number one, or must there be some evidence of coercion, and if so, what's the evidence here? Because it seems that the district court wanted the juror to go back, went through a lot of questions of bringing the foreperson in, talking to the juror, and the juror clearly has had reluctance from day one, but the judge sent the juror back in, and then the juror calls in sick. So, you know, I'm wondering, you know, does there have to be evidence of coercion, and it would seem to me that the district court was trying to get this juror to deliberate. Yes, Your Honor, I think that there is evidence of coercion. I think most strikingly, after the two notes that were submitted to the jury, the trial court conducted a very adversarial interview of juror number one, whom it knew to be the loan holdout juror. Well, but he kept telling the juror, don't tell me, you know, how you're split, and that juror kept working it out. I mean, I know having been a trial judge, you know, you tell them, I don't want to know what, I don't want to know anything about that, and it was almost like that juror saw that as a red, you know, I'm going to say it anyway, I'm the only one, I'm the only one to, that, I mean, that juror from day one wanted to go. Well, I think it's apparent from the two notes that were sent in. So even before the inquiry began, you know, the first note said, we're 11-1, you know, we're ready to go. And the second note from juror number one was saying, I have a lot of doubts, I have a problem with the evidence. And the court said, I don't want to know that, but they kept telling. So that being the case, that can't in and of itself. Okay. I think the most strikingly, when, when asking juror number one about, he started out the, the trial court started out the substantive inquiry by saying, did you look at the, you know, were you looking at the evidence? And when she tried to say, yes, I was looking, he said, well, stop right there. I never once saw your eyes look at the evidence. And then when she tried to explain, well, yes, I, I did, the trial judge went on to say, well, how could you do that if your eyes were not up? Your eyes were actually closed on many occasions. And there was no beneficial value to this manner of questioning. Can I ask you a question, a predecessor question? What the, Judge Callahan's question assumed, and you seem to be assuming, that the coercion standard relies on a motive by the judge to get rid of her. Is that right? I don't know the answer to that, but is that right? Well, I think as this Court held in Smith v. Curry, which the Supreme Court recently decides denied cert in that case, I think coercion can, can, can comprise of a combination of factors. But it doesn't require, as far as I know, an inquiry into the mind of the judge. Well, in this case, the, there is evidence that the trial court was very concerned about time. And there are several references in the record concerning the trial court's concern here. At ER 92, the defense attorney saying, I know you don't want to delay the jury. At ER 96, the trial court telling counsel, speed it up. I don't want to run over the trial. We already have jurors who want to leave. At ER 140, the prosecutor opposing defense requests for further inquiry into the illness of juror number one says, you know, this juror has held up the process for three days and should not be allowed to further hold up the other jurors. At ER 141, the trial court in denying defense requests for further inquiry says, we're going to be over our time limit if we start losing jurors. Well, but if, all right, if you, if the judge had let her go and not sent her back in, would you have a better case? Would that be better for you? Okay. At that point, the judge knows she's been reluctant all along. She doesn't want to do it. She said, please, you know, let me go and all of that. But the court sends her back in. All right. If the court had at that point, knowing she was the holdout, had sent her home, would you have a better case? I don't think so. I think that he sends her back in, but he doesn't address any of her concerns. I mean, she had explained that, okay, the other jurors are accusing me that I'm doing this because of my ethnicity, I'm not, we're going in circles. He never addresses any of her concerns. Unlike the judge in Presby-Marshall, he doesn't try and support her. But you get them that there's something wrong with the, we're having a little problem here with the language coming through garbled. Go ahead. I think they'll be able to fix it. Okay. You sound just fine. I'm fine. I know. I know. I'm saying it's only garbled in one direction. You can't hear. Okay. I should keep going? Maybe slow down a little. Okay. Maybe that will help. Okay. Okay. Go ahead. I'm sorry. I forgot where I was. I think that, by contrast, the judge in Presby-Marshall did everything that he could to address the juror's concerns. He told the juror to hold on to views conscientiously held. He offered to re-instruct the jury on the proper manner of deliberation because that holdout juror had complained. The reason this case is complicated is because I agree with you that the interrogation was somewhat hostile. But leaving that aside, in the end, he sent her back in to deliberate. And it was she who called in and said, essentially, I can't come back. So he did not dismiss her for refusing to deliberate. He ultimately dismissed her for being sick. So the actual question, I suppose, is whether he needed to make more inquiry into the illness question. Yes. And I believe he did. Given the events of the prior day, it wasn't enough for the state appellate court to just write off. So we have to drag people in? Say, like, you know, get on the phone, like, come in in your pajamas and I want to take a look at you or I want to take your temperature? I think in this particular case, because the trial court knew that she was the lone holdout juror, and given the hostile inquiry of the prior day, I think there was a very high risk that she was faking illness. And I think it was Judge Ferguson and Miller v. Stagner who warned of this exact scenario. Well, if she was faking, would that be enough to – you know, if you've got someone that's willing to fake illness, you know, is that person doing their job as a juror? Well, at a minimum, it would require the trial – the trial court made no inquiry at all. It didn't even question the foreperson, which would have taken five seconds. Didn't get on the phone, try and make a phone call. I mean, she simply – or the trial court – The court did, though, say she didn't look well to me. But that was – Now, is that a factual finding? She didn't look good to me? That – You weren't there. I wasn't there. So what do we do with that? Right. But that – that was a non-contemporaneous observation, and that was made on the morning that she called in sick. She hadn't come into court, and he was saying, oh, you know, she hasn't looked – she hasn't looked well the past week, just as a passing – You're passively saying we should not believe him. I don't think that this evidence – I have a question. The judge kept saying, well, your eyes were closed. You weren't looking at the evidence. What was there that she had to look at? It seems to me usually it's testimony, and one might close one's eyes to kind of concentrate on what's being said. What, in fact, was the evidence that she would see if she opened her eyes? That's exactly it. I mean, and she even said, I close my eyes to better concentrate on the witness's testimony. And I think by the trial court, the most authoritative person in the room to say, I don't think you were looking at the evidence, that sends a clear signal. It seemed to be something she was looking at, because she said that she looked at it a whole lot during – in the jury room. She did say that, but there must have been something physical to look at. There may have been – yeah, I'm not clear on exactly what. Why do you – well, I have two questions, and I'm only giving you two at once because we're running out of time. One is, one of the jurors said repeatedly, who was interrogated or questioned, that she kept saying, I disagree with the law. Now, I assume that would be a reason to dismiss her for non-deliberation. But that isn't what happened. But would it be? She kept saying – he kept saying the problem was that she kept coming in and saying, I disagree with the law. You're talking about the jury for the poor person who was interviewed? Yes. I was complaining about jury number one. Not without further – I think if she had just said that, I don't think that he would have grounds to just dismiss her based on what the jury for a person said. I mean, there would be – there would need to be more evidence on the record. More meaning ask her? Ask her, ask other jurors, give it another try. And then my other question, which is really my biggest problem, is how all this fits in with AEDPA. I mean, I've had other cases involving dismissal of jurors, and the problem is that there's almost no Supreme Court law, which puts us in a very difficult position with regard to AEDPA. So I guess I'd like your comment on that. Well, Saunders v. Lamarck was also – was a habeas case. I'm sorry? Saunders v. Lamarck was a habeas case where this Court held that the dismissal of a holdout juror was in violation of the defendant's constitutional rights, and that was an AEDPA case. Well, but that was ultimately about bias, inherent bias. And there, there is law. Well, that was ultimately about, I believe, not having substantial evidence on the record for a proper dismissal under 1089, which is also what we argued here. That there is not a – given the events of the prior day, given the hostile inquiry and the judge knowing that she's a holdout, and then saying, well, you didn't look at the evidence. I mean, that's essentially telling her, well, her position is wrong. The other 11 is right. And given the lack of inquiry into what happened, you know, after she called in sick and during the last 10 minutes of the deliberations, our position is that there is not substantial evidence on the record to support the proper dismissal under Section 1089, as in Saunders v. Lamarck. Okay. I'll give you a time. I'll give you a minute or so in rebuttal. Thank you. The argument was very garbled for a while, but it straightened out, so maybe just let it go for now. Is it better? Yeah. Okay. Yes. Good morning, Your Honors. Deputy Attorney General Teresa Patterson on behalf of Respondent. May it please the Court. In this case, the jury's verdict was not coerced. Juror number one was not part of the ultimate jury that returned a verdict. Was not? I'm sorry? She was not part of the ultimate jury that returned a verdict. And in that respect, this case is easily distinguishable from Lowenfield, where the entire jury experienced the court's comments that were ultimately found to not be coercive. What about the United States v. Jordan? How do you distinguish that case from here? I believe that was a case based on double jeopardy principles. Is that the case that states that a defendant has a valued right to a particular tribunal? Is that the case here? But that's the whole premise, ultimately, of the problem with dismissing a holdout jury, which is that you're not getting a trial by the jury that was originally selected. You're getting a trial by a different jury. Correct. But as you pointed out earlier, there's no controlling Supreme Court authority discussing the improper removal of a juror. All right. Let's say if the judge had, after the first, not sent her back into deliberations, if the judge had dismissed her at that point, would you have more of a problem? Certainly. I think that would have been a big problem. She was telling the court with the court told her, I don't want to know. And she kept telling. No, no, no, no, no. But if the court at that point had dismissed her based on the questions that were asked and all of those things, would arguably under AEDPA, would that have possibly been coercion? That would have been more problematic for us. But — Except that your ultimate argument is that there's no — under AEDPA, there's no Supreme Court law. Right. So if he had just said, I'm dismissing you because you're the holdout juror and I want to get this trial over with, then what? That would be a more difficult case. But that's — So would you then concede there's Supreme Court law and it's a coerced jury? No, not necessarily, because there is no Supreme Court. So you'd still say she loses. Correct. There's no controlling Supreme Court precedent involving such an issue. Well, I kind of find it hard to believe, though, if all that the court — if the only information the court had was, you're the holdout and you're doing everything that you're supposed to do, and the reason that the court removes someone, I think that would be a pretty clear problem, to remove that person. If the only reason you remove someone is because they don't agree with the other 11 people, without other findings, I think that would be a problem. Okay. Well, I — I — No. I mean, you know, obviously, I disagree, but that's not the case. So you could go — so they send out a note, we're 11 to 1, and we're deadlocked. And there's no indication that the one isn't looking at the evidence, isn't deliberating with the other people. There's — the person hasn't said, I'm not following the law. The person just said, under — I'm not convinced beyond a reasonable doubt. You pull that person because you want to get a unanimous verdict? You don't think that would be a problem? If under those facts? On direct appeal, absolutely. Under the ADPA, not so clear, because there has been no case clearly establishing that that is a constitutional violation. Okay. Counsel, tell me about the Tanner case, which 483 U.S., 107. You can instruct a deadlocked jury to deliberate, but not to course. Now, does that give us some guidance here? I'm — you can ask a jury to continue deliberating, and that, depending on the circumstances of the instruction, may or may not be coercive. But what we're talking about now, is there any Supreme Court authority? And there is Supreme Court authority that you may not course. The Lowenfield v. Phelps case, the Supreme Court did state that a defendant has a right to an uncoursed verdict. But it found under the facts of that case that there was no coercion, and that case involved instructions to the jury and inquiring whether the jurors believed a verdict could be reached. And so that involved jurors who all stayed on the jury versus improperly removing a jury, a juror. It's different than this case. What about the Tanner case? I'm sorry, Your Honor, if you could — I'm not recalling the exact facts of that case. Tanner was a federal case. And it's Supreme Court. They were deadlocked and said the judge could order them to deliberate but not coerce them. And I don't know where that line is, but it is Supreme Court authority that you may not coerce. In the Skilling case, which just came down, they talk in terms of the right to an impartial jury. So I think we've got some Supreme Court authority out there that gives us some guidance. What's important to note, though, is whether these cases were decided based on constitutional principles versus under the Supreme Court's supervisory powers over the federal court. And it's different when a case arises in a federal habeas context or if the Supreme Court would specifically hold on a constitutional principle. And under the AEDPA, you need clearly established law based on a constitutional provision. From your perspective, is your best argument that she was excused because she called in sick and that there isn't any established Supreme Court precedent that required the court to get a doctor's excuse or say come in in your pajamas and let me take your temperature or whatever? It was reasonable for the trial court to do what it did here. The juror called in sick and gave specific symptoms she was experiencing. She'd been vomiting overnight. She had a headache in the morning. She was a nurse, which was noted by the trial court. Doesn't it seem a little peculiar, though, that he didn't even talk to her? It was all secondhand? In a perfect world, the judge would have personally spoken to this juror, but it's not. How could he have made any judgment about her bona fides without at least talking to her? Well, there's no reason to believe she would have told a different version. Oh, there's lots of reasons. Actually, there's less. Well, yes, but he could have made inquiry to her. Well, he could have called her, but the jurors don't have the judge's direct line. I can tell you that. I mean, I always got messages when I came in, so-and-so's in a car accident, so-and-so did this or, you know, whatever. And it would be callous to actually drag her into court when she's describing physical symptoms. Well, how long did she say she'd be gone? She said she wouldn't be able to return the rest of the week. I believe this happened on Wednesday. Doesn't her saying, I won't be able to come in for several days, make her profession of illness almost automatically suspicious? I mean, what she said was, I was vomiting last night and I have a headache, and I can't come in for three days. I mean, there's no connection there. I mean, from ordinary knowledge of relatively minor illnesses. Well, she was refusing to come in that day. Exactly. She was refusing, but the notion that she couldn't, especially the day after. I mean, there's just no connection between having a headache one morning and saying I can't come in for the rest of the week. That's all she had at that point was a headache. The fact that she'd been vomiting overnight, and that would be inconsistent with performing as a juror. That day, but the rest of the week? And the trial court also made a finding on the record that she did not look well physically all week. And she was very stressed out. The trial judge, I mean, it does require, I guess, a credibility finding about him. But he, with regard to her inattention, he kept telling the lawyers that he didn't see her being inattentive. And then he told her that he never saw her looking at the evidence, that she was looking down and all that. And all he was doing was parroting the prosecutor, who he had told that he hadn't noticed that. So that was peculiar right there. It had been several days since the DA had put that observation on the record. And so there was an opportunity after that fact for the trial court to pay closer attention to that juror. How long a trial was this? Pardon me? How long a trial was this? It started on a Monday. On Wednesday was when the DA put on the record that she wasn't paying attention. And then deliberation started on Friday afternoon. And it was the following Tuesday that the jurors sent their two separate notes to the trial court. And then she was sent back Tuesday afternoon. She was sent back Tuesday afternoon. And it's important to note that the judge didn't excuse her. He wanted her to continue deliberating. And as far as the rest of the jury was concerned, she was excused because she was unable to attend. And that forced the court to have to excuse her. But they knew what had happened before. They knew that they had sent this note out. And the perception was that they had succeeded in driving her off the jury. No, because she was made to return that afternoon. But they did. And it's almost certain that the perception was, we made her so miserable she didn't want to come back. Yeah, but that had nothing to do with the trial court. And... Well, it had to do with him. And also, we don't know what happened when she went back in that room. That's true. But there's no indication. And he was specifically asked to find out. And that would have been really simple. Well, but there was no allegation of misconduct. Of course there was no allegation because he didn't speak to her. Well, she didn't make ñ when she called in sick, she said, I'm sick. She didn't say they bullied me when I went back into the jury room. She made ñ she could have complained when she spoke to the clerk. But she chose to ñ she called in and said, I'm sick. I cannot attend. She did not make any suggestion that anything improper went on. And there was nothing to investigate. Okay. You're over your time. Thank you very much. Ms. Feer will give you a minute. Thank you. With respect to that, the last point. I mean, she had already tried to complain. I mean, she had sent in this note saying, you're doing all this. They're calling ñ they're commenting on my race. And the judge did nothing. So, of course, why would she call in and say, well, they're bullying me? So here's another AEDPA problem. Aside from the problem of what's these clearly established ñ well, first of all, what would you say is the clearly established Supreme Court law? Lowenfield? Lowenfield. Lowenfield. And the combination of factors. I mean, at some point it reaches coercion. And the Supreme Court has said that we don't have to wait for it. All right. And then the second question is, the second prong of reasonableness. The State court of appeals went through the facts here and essentially said that because of the illness, as I understand it, or the professed illness, that either she was ill or she was lying, and in either case, it was appropriate to excuse her. Why isn't that reasonable? Again, with respect to the inquiry, the State court didn't consider relevant facts, such as the trial court knowing that juror number one was the lone holdout and that all the other jurors knew this, that a verdict was returned very shortly after the jury was reconstituted, just a mere few hours, whereas they had deliberated for three days beforehand. And, you know, the trial court basically ñ or the appellate court stated that the trial court had made an honest effort to determine if juror number one was deliberating or intimidated by other jurors, and that's an unreasonable determination of the facts. It did not make an honest effort to see if juror number one was deliberating because it basically accused the juror of not even looking at the evidence. Okay. Thank you very much. Thank both of you for a useful argument. The case of Lopez v. Kiernan is submitted.
judges: Fletcher B. , Berzon, Callahan